## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CIVIL ACTION** |
| **VERSUS** | **NO.  11-119** |
| **CHRISTOPHER DORSEY** | **SECTION: "E" (5)** |

### ORDER AND REASONS

On February 16, 2022, Defendant Christopher Dorsey filed a motion in which he "moves this Honorable Court to reconsider its previous denial to grant compassionate release pursuant to 18 U.S.C. § 3582."[1] The Court thus construes Dorsey's motion as a motion for reconsideration of the Court's June 24, 2021, Order and Reasons[2] denying compassionate release. The Government filed a response in opposition to Dorsey's motion.[3] Dorsey filed a reply.[4]

### BACKGROUND

On May 12, 2011, Dorsey was charged in a three-count indictment with two counts of being a felon in possession of a firearm and one count of conspiring to obstruct justice.[5] Dorsey pleaded guilty to all three counts.[6] On July 18, 2012, the Court sentenced Dorsey to 120 months as to Counts 1 and 2 and 168 months as to Count 3, to be served concurrently.[7] Dorsey has less than two years left to serve on his sentence.[8]

---

[1] R. Doc. 146 at 1; *see also id.* at 7 (again requesting "this Honorable Court to reconsider his application for compassionate release, pursuant to 18 U.S.C. § 3582").

[2] R. Doc. 146.

[3] R. Doc. 148.

[4] R. Doc. 151. The Court also granted Dorsey leave to supplement the record with several letters in support. R. Doc. 154.

[5] R. Doc. 1.

[6] R. Doc. 25.

[7] R. Doc. 49.

[8] According to the Bureau of Prisons website, his projected release date is April 7, 2024. *See* https://www.bop.gov/inmateloc/.

On November 16, 2020, Dorsey, represented by counsel, filed an initial motion for compassionate release.[9] On December 11, 2020, the Court denied Dorsey's first motion for compassionate release without prejudice because Dorsey had not exhausted his administrative remedies.[10] On April 26, 2021, Dorsey, acting pro se and having exhausted his administrative remedies, mailed a letter to the Clerk of Court, with a request that it be forwarded to the Court, and a personal letter to the Court in support of his motion seeking compassionate release.[11] The Court construed the filings as a second motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A) and a memorandum in support thereof.[12] On June 24, 2021, the Court denied Dorsey's second motion for compassionate release on the merits.[13] Dorsey now seeks reconsideration of the Court's June 24, 2021, Order and Reasons denying his second motion for compassionate release.[14]

## LEGAL STANDARD

Though motions for reconsideration in criminal actions "are nowhere explicitly authorized in the Federal Rules of Criminal Procedure, they are a recognized legitimate procedural device."[15] The Fifth Circuit has held that if a motion for reconsideration is filed within twenty-eight days after entry of the judgment from which relief is being sought, the motion is treated as a motion to alter or amend under Rule 59(e); otherwise, it is treated as a motion for relief from judgment under Rule 60(b).[16] In this case, the Court denied Dorsey's second motion for compassionate release on June 24, 2021.[17] Dorsey filed

---

[9] R. Doc. 136.
[10] R. Doc. 139.
[11] R. Docs. 140, 140-1.
[12] R. Doc. 145 at 2.
[13] *Id.*
[14] R. Doc. 146.
[15] *United States v. Cotto*, 2020 WL 3832809 at *1 (E.D. La. July 8, 2020) (quoting *United States v. Lewis*, 921 F.2d 563, 564 (5th Cir. 1991)).
[16] *Shepherd v. Int'l Paper Co.*, 372 F.3d 326, 328 n.1 (5th Cir. 2004); *see also* Fed. R. Civ. P. 59(e) ("A motion to alter or amend a judgment must be filed no later than 28 days after the entry of judgment.").
[17] R. Doc. 145.

this motion for reconsideration on February 9, 2022.[18] Because the motion was filed more than 28 days after June 24, 2021, it is treated as a motion for relief from judgment under Rule 60(b).

> Under Rule 60(b), a party may seek relief from an order for:
>
> (1) mistake, inadvertence, surprise, or excusable neglect;
>
> (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
>
> (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
>
> (4) the judgment is void;
>
> (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
>
> (6) any other reason that justifies relief.[19]

The "catch-all" provision in Rule 60(b)(6) is "'mutually exclusive' with the rule's other clauses."[20]

## LAW AND ANALYSIS

### I.   Dorsey Has Not Shown He Is Entitled to Relief Under Rule 60(b)(1).

Dorsey argues the Court misconstrued the personal letter he sent to the Court as a second motion for compassionate release. This argument invokes relief under Rule(60)(b)(1), which allows a Court to grant relief from an order due to "mistake, inadvertence, surprise, or excusable neglect."[21] "A 'mistake' under Rule 60(b)(1) includes

---

[18] R. Doc. 146.

[19] Fed. R. Civ. P. 60(b).

[20] *Nat'l City Golf Fin., a Div. of Nat'l City Com. Cap. Co. v. Scott*, 899 F.3d 412, 419 (5th Cir. 2018). A Rule 60(b) motion "must be made within a reasonable time – and for reasons (1), (2), and (3) no more than a year after the entry of the judgment or order or the date of the proceeding." Fed. R. Civ. P. 60(c). Even if the Court accepts the motion as timely, Dorsey fails on the merits of his Rule 60(b) motion. *See Jenkins v. LaSalle Sw. Corr.*, No. 3:17-cv-1376-M-BN, 2020 WL 2106355, at *5 (N.D. Tex. Jan. 28, 2020) (assuming timeliness of a Rule 60(b) motion filed one year after the relevant ruling to deny the motion on the merits).

[21] Fed. R. Civ. P. 60(b)(1).

a judge's errors of law."[22] The Supreme Court has recently clarified that such a mistake need not be obvious.[23]

Dorsey argues the Court erred in misconstruing the personal letter he sent to the Court as a second motion for compassionate release.[24] He also seems to take issue with the letter being placed on the public record.[25] However, Dorsey specifically requested, "Following the Judges [sic] review of my personal letter please ensure it's placed on record."[26]  In addition, Dorsey moved for compassionate release in his letter, stating,

> In addition to the arguments advanced by my attorney in support of my early release, I contend that Im [sic] an "extraordinary" individual and have presented, throughout this letter, "compelling" reasons for my sentence to be reduced. I respectfully move this Court to sympathize with the misguided boy I was and have enough compassion, enough faith, in the man Ive [sic] become to order my return to my family and career.[27]

In any event, even if the Court misconstrued Dorsey's letter as a second motion for compassionate release, courts have not granted relief under Rule 60 for such a misinterpretation when the party's interpretation of the filing would result in the same outcome anyway.[28] For the reasons that follow, the additional reasons Dorsey presents in the current motion for reconsideration do not affect the Court's determination that compassionate release is not warranted in this case.

## II.   Dorsey Has Not Shown He Is Entitled to Relief Under Rule 60(b)(2).

Dorsey argues the Court should reconsider its prior denial of compassionate release due to new evidence of extraordinary and compelling reasons justifying a

---

[22] *Kemp v. United States*, ___ S. Ct. ___ (U.S. June 13, 2022), 2022 WL 2111354, at *4.
[23] *Id.* at *5. In doing so, the Supreme Court abrogated the Fifth Circuit's approach. *See id.*, *abrogating In re Ta Chi Navigation (Panama) Corp. S. A.*, 728 F.2d 699, 703 (5th Cir. 1984)
[24] R. Doc. 146 at 6-7; R. Doc. 148 at 9-10.
[25] *Id.*
[26] R. Doc. 140 at 2.
[27] R. Doc. 140-1 at 6.
[28] *See, e.g.*, *United States v. Saunders*, No. 12-141, 2022 WL 742441, at *5 (E.D. La. Mar. 11, 2022).

reduction in sentence under 18 U.S.C. § 3582(c)(1)(A)(1).[29] This request invokes relief under Rule 60(b)(2). Rule 60(b)(2) allows a Court to grant relief from an order due to "newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b)."[30] "To obtain Rule 60(b)(2) relief, a movant must demonstrate: '(1) that it exercised due diligence in obtaining the information; and (2) that the evidence is material and controlling and clearly would have produced a different result if present before the original [order].'"[31] "A [decision] will not be reopened if the evidence is merely cumulative or impeaching and would not have changed the result."[32] "The movant must 'strictly' satisfy these requirements."[33]

Dorsey argues he has new evidence that 1) the COVID-19 outbreaks at Bureau of Prisons ("BOP") facilities and the resulting policies meant to limit the spread of COVID-19, such as isolation periods, have harmed his mental health; 2) Dorsey's obesity is an underlying condition that places him at risk of severe illness or death if he contracts COVID-19; 3) there is an outbreak of COVID-19 at Dorsey's facility, which, at the time he filed his motion, required him to be isolated after possible exposure to the virus; 4) BOP has not implemented sufficient measures to control the spread of COVID-19; 5) vaccination may not be wholly effective against the omicron variant of COVID-19; and 6) because Dorsey has served most of his prison sentence, continued incarceration will not serve the public interest.[34]

---

[29] R. Doc. 146 at 15-57.
[30] Fed. R. Civ. P. 60(b)(2).
[31] *Nat'l City Golf Fin.*, 899 F.3d at 418 (quoting *Thermacor Process, L.P. v. BASF Corp.*, 567 F.3d 736, 744 (5th Cir.2009)).
[32] *Hesling v. CSX Transp., Inc.*, 396 F.3d 632, 639 (5th Cir. 2005) (citing *Trans Miss. Corp. v. United States*, 494 F.2d 770, 773 (5th Cir. 1974)).
[33] *Nat'l City Golf Fin.*, 899 F.3d at 418 (citing *Longden v. Sunderman*, 979 F.2d 1095, 1102 (5th Cir.1992)).
[34] R. Doc. 146 at 43-45.

All of these grounds could have been raised in Dorsey's second motion for compassionate release with the exercise of due diligence, except for the current outbreak at Dorsey's facility and the effectiveness of vaccines against the omicron variant of COVID-19. In fact, Dorsey did raise several of these grounds for relief, which the Court already considered in its June 24, 2021, Order and Reasons. In his second motion for compassionate release, Dorsey stated, "Prisoners are just being warehoused. Most of my days have been spent locked in a 10' x 7' cell for 22 hours . . . [sic] forced to mentally rewind and playback my errors and await my release with anxious anticipation."[35] This argument is substantially similar to Dorsey's current complaints of being isolated due to BOP's COVID-19 policies and the result on his mental health. Dorsey also argued in his second motion for compassionate release that "10 years is indeed more than enough punishment for the crime I stand convicted of,"[36] which is similar to his current argument continued incarceration is not necessary because he is close to the end of his prison term. Dorsey's second motion for compassionate release also incorporated the reasons stated in his first motion for compassionate release filed by his attorney,[37] and the Court considered those earlier arguments as well.[38] In particular, Dorsey's first motion for compassionate release argued "the prison system where Mr. Dorsey is being housed are inundated with cases of the virus," and "Mr. Dorsey has a host of health problems."[39] These arguments are similar to Dorsey's current arguments concerning his obesity and the recent COVID-19 outbreaks at his facility.

---

[35] R. Doc. 140-1 at 6.

[36] *Id.*

[37] *See id.* (seeking compassionate release for the reasons stated "[i]n addition to the arguments advanced by my attorney in support of my early release").

[38] *See* R. Doc. 145 ("In his original motion, Dorsey argued extraordinary and compelling reasons are present for compassionate release because he suffers from 'a host of health problems.' In the pending motion, Dorsey does not mention his health, but the Court will consider whether he has health problems that constitute extraordinary and compelling reasons.").

[39] R. Doc. 136 at 1-2.

Moreover, none of these new grounds for relief would produce a different result. A court may grant compassionate release if 1) extraordinary and compelling reasons warrant a reduction in sentence, and 2) the 18 U.S.C. § 3553(a) factors weigh in favor of release.[40] In the June 24, 2021, Order and Reasons, the Court found both requirements were not met.[41] As to the extraordinary and compelling reasons, the Court examined Dorsey's medical records and determined he had no serious health issues.[42] Dorsey's obesity was not noted in the medical record the Court examined at that time,[43] but, assuming he does qualify as obese, "commonplace maladies, like obesity . . . , do not make [Dorsey's] case 'extraordinary.'"[44] In addition, the Court found Dorsey has been vaccinated against COVID-19.[45] Although Dorsey speculates as to the vaccine's effectiveness against the omicron variant, "compassionate release is not warranted based on a vaccinated defendant's fear of the Omicron variant, given that 'the CDC has stated that "COVID-19 vaccines are highly effective at preventing severe illness, hospitalizations, and death" from the omicron variant.'"[46] Dorsey complains of an outbreak of COVID-19 cases at his facility, but BOP's website currently lists zero positive cases among inmates out of a total inmate population of 960 and one positive case among staff.[47] Moreover, BOP has implemented operational modifications to combat the spread of COVID-19, and

---

[40] See 18 U.S.C. § 3582(c). A reduction must also be consistent with applicable policy statements issued by the Sentencing Commission. Id. However, the Court is not bound by the current policy statement or commentary in U.S. Sentencing Guidelines Manual § 1B1.13, United States v. Shkambi, 993 F.3d 388, 393 (5th Cir. 2021), although they do inform the analysis of what reason may be extraordinary and compelling, United States v. Thompson, 984 F.3d 431, 433 (5th Cir. 2021).
[41] R. Doc. 145 at 6-10.
[42] Id. at 7.
[43] See R. Doc. 142-3.
[44] United States v. Tello, No. 4:18-CR-7, 2021 WL 2005792, at *4 (E.D. La. May 18, 2021) (citing Thompson, 984 F.3d at 434).
[45] R. Doc. 145 at 7.
[46] United States v. Sentimore, No. 02-26, 2022 WL 1618918, at *3 (E.D. La. May 23, 2022) (quoting United States v. Saunders, No. 12-141, 2022 WL 252701, at *5 (E.D. La. Jan. 27, 2022)).
[47] COVID-19 Coronavirus, Fed. Bureau of Prisons, https://www.bop.gov/coronavirus/index.jsp (last visited June 27, 2022).

Dorsey has not established that "BOP cannot manage the outbreak within [his] correctional facility or that the facility is specifically unable to treat [Dorsey], if [he] were to contract the virus."[48] Dorsey argues BOP's operational modifications have had a negative affect on his mental health, but as one court has noted,

> the conditions of confinement in jail, alone, are not sufficient grounds to justify a finding of extraordinary and compelling circumstances. Rather, those circumstances are applicable to all inmates who are currently imprisoned and hence are not unique to any one person. The safety measures that have been implemented benefit [Dorsey], other inmates, and BOP staff members during the pandemic. The consequential inconveniences presented by the BOP's modified operations on [Dorsey's] daily activities do not create an extraordinary and compelling reason to reduce [his] sentence.[49]

Dorsey has not shown extraordinary and compelling reasons warrant a reduction in sentence.

In the June 24, 2021, Order and Reasons, the Court also found the 18 U.S.C. § 3553(a) factors weighed against reducing Dorsey's sentence due to the violent nature of the underlying offense; the presence of drugs in the underlying offense; the recommended guideline sentence for Dorsey; and his extensive list of violations while in BOP custody, including write-ups for possessing drugs/alcohol in 2021, possessing a hazardous tool in 2021 and 2020, using suboxone in 2020 and 2019, testing positive for Buprenorphine in 2019, refusing a work assignment in 2019, possessing narcotics in 2017, phone abuse in 2017, possessing an unauthorized item in 2017, and possessing a dangerous weapon in

---

[48] *See United States v. Terry*, No. 4:16-CR-101(12), 2021 WL 4226053, at *4-6 (E.D. Tex. Sept. 15, 2021).
[49] *Id*. at *6 (citations omitted) (quoting *United States v. Iruegas*, No. CR 2:18-366, 2021 WL 1169348, at *2 (S.D. Tex. Mar. 25, 2021)) (citing *United States v. Cruz-Cruz*, No. CR13-49RSL, 2021 WL 1968389, at *4 (W.D. Wash. May 17, 2021)); *see also Cruz*-Cruz, 2021 WL 1968389, at *4 ("Defendant's allegations regarding general conditions of confinement, coupled with vague allegations of COVID-19 exposure and damage to mental health, are insufficient to establish extraordinary and compelling reasons exist."); *United States v. Carrera*, No. 3:14-CR-0367-B-40, 2020 WL 7225997, at *3 (N.D. Tex. Dec. 7, 2020) (citation omitted) ("Even acknowledging Carrera's alleged mental-health symptoms resulting from isolation, and crediting his assertion that he suffers from 'pains and muscle cramps' resulting from COVID-19, Carrera has still not demonstrated extraordinary and compelling circumstances warranting compassionate release.").

2014.[50] Dorsey argues his violations should be viewed "in context with the environments in which he has been housed,"[51] but that does not diminish the seriousness of his violations. Beyond disagreeing with the Court's assessment of the § 3553(a) factors and reiterating he is close to release from imprisonment,[52] Dorsey does not offer any new evidence that would change the Court's determination that the § 3553(a) factors weigh against reducing Dorsey's sentence. Dorsey has not met his burden of justifying relief under Rule 60(b)(2).

### III.  Dorsey Has Not Shown He Is Entitled to Relief Under Rule 60(b)(6).

Dorsey next argues the Government has improperly targeted Dorsey for refusing to cooperate and the counsel he retained for his first compassionate release motion acted improperly. These arguments can only qualify as a motion for reconsideration under Rule 60(b)(6) for "any other reason that justifies relief."[53] A motion under Rule 60(b)(6) is a "catch all" basis for relief and allows relief from judgment for "any other reason justifying relief from the operation of the judgment," but the situation must be "extraordinary" to fall within that exception.[54] To warrant relief, a party must show "the initial judgment to have been manifestly unjust."[55] Factors to consider in determining whether a reason is extraordinary "may include, in an appropriate case, 'the risk of injustice to the parties' and 'the risk of undermining the public's confidence in the judicial process.'"[56]

First, Dorsey argues the Government has aggressively targeted him both in his original prosecution and the Government's opposition to his early release solely because

---

[50] R. Doc. 145 at 9-11.
[51] R. Doc. 146 at 51.
[52] *Id.* at 59-60.
[53] Fed. R. Civ. Pro. 60(b)(6).
[54] Fed. R. Civ. P. 60(b)(6); *United States ex rel. Garibaldi v. Orleans Par. Sch. Bd.*, 397 F.3d 334, 337 (5th Cir. 2005).
[55] *Catherine v. Razzoo's Bar & Patio*, No. CV 19-13221, 2021 WL 981608, at *1 (E.D. La. Mar. 16, 2021).
[56] *Buck v. Davis*, 137 S. Ct. 759, 778 (2017) (quoting *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 864 (1988))

he refused to cooperate with the Government.[57] After reviewing the record, the Court finds no evidence of such treatment. Dorsey was charged by a three-count Indictment.[58] No charges were ever added throughout his prosecution. Dorsey chose to plead guilty as charged to all three counts without the benefit of a plea agreement.[59] His sentence of imprisonment was within the guidelines.[60] Dorsey has not pointed to any treatment by the Government that would make the previous denial of compassionate release manifestly unjust.

Second, Dorsey argues the counsel he retained to handle his motion for compassionate release committed misconduct.[61] This Court has analyzed claims for attorney misconduct under Rule 60(b)(6).[62] Generally, "a lawyer's ignorance or carelessness do [sic] not present cognizable grounds for relief under [Rule] 60(b)."[63] That is because, under Supreme Court precedent, "a party is bound by [his] attorney's acts."[64] However, several courts have recognized that an attorney's *gross* negligence may warrant relief under Rule 60(b)(6).[65] Gross negligence is "neglect so gross that it is inexcusable."[66] Implicit in these decisions is that the attorney misconduct must actually result in a ruling unfavorable to the client.[67]

---

[57] R. Doc. 53-55.

[58] R. Doc. 1.

[59] R. Doc. 25.

[60] R. Doc. 50 at 13.

[61] R. Doc. 146 at 7.

[62] *United States v. Parsee*, No. 97-81, 2022 WL 74190, at *3-4 (E.D. La. Jan. 7, 2022).

[63] *In re Va. Info. Sys. Corp.*, 932 F.2d 338, 342 (4th Cir. 1991) (alterations in original), *abrogated on other grounds by Barnhill v. Johnson*, 503 U.S. 393 (1992); *see also Cmty. Dental Servs. v. Tani*, 282 F.3d 1164, 1168 (9th Cir. 2002).

[64] *Capitol Radiology, LLC v. Dimensions Health Corp.*, No. DKC 2005-3298, 2007 WL 9782474, at *1 (D. Md. Nov. 15, 2007) (quoting *Link v. Wabash R. Co.*, 370 U.S. 626, 633-34 (1962)).

[65] *See, e.g.*, *Cmty. Dental Servs.*, 282 F.3d at 1168-69 & n.9 (collecting cases); *Al-Sabah v. Agbodjogbe*, No. 20-2375, 2021 WL 5176463, at *2 (4th Cir. Nov. 8, 2021) (assuming gross negligence constitutes a basis to vacate a judgment); *In re Va. Info. Sys.*, 932 F.2d at 342 ("[A]ttorney malfeasance which actively misleads a client or is comparably culpable might successfully ground a Rule 60(b) motion.").

[66] *Al-Sabah*, 2021 WL 5176463, at *2 (quoting *Lal v. California*, 610 F.3d 518, 524 (9th Cir. 2010)).

[67] *See, e.g.*, *Cmty. Dental Servs.*, 282 F.3d at 1172 (emphasis added) (holding "[w]here . . . an attorney engages in grossly negligent conduct *resulting* in [an adverse] judgment, the client merits relief under Rule

Dorsey lodges several complaints against his former counsel. He states his counsel did not inform Dorsey of pending allegations of attorney misconduct, and these allegations eventually resulted in his counsel's suspension from the practice of law.[68] Dorsey also states his counsel did not visit him and did not arrange as many legal calls as he would have liked to discuss his motion.[69] Dorsey states the motion for compassionate release his counsel eventually filed, Dorsey's first motion for compassionate release, was flawed, being both premature because Dorsey had not exhausted his administrative remedies and containing factual inaccuracies, which caused the Court to view Dorsey as dishonest.[70] Finally, Dorsey states, after he exhausted his administrative remedies himself, his counsel did not file a renewed motion for compassionate release; instead Dorsey "made the decision to pen and submit a personal letter to the Court" because he "had lost confidence in [his counsel's] commitment to represent him."[71]

The alleged misconduct by Dorsey's counsel was not "so gross that it is inexcusable,"[72] and it did not affect the Court's ultimate denial of Dorsey's compassionate release on the merits. Dorsey's counsel represented him on his first motion for compassionate release, which was filed on November 16, 2020.[73] The Court denied this first motion without prejudice on December 11, 2020, because Dorsey had not exhausted

---

60(b)(6)"),*Lal*, 610 F.3d at 524 (emphasis added) (holding "an attorney's gross negligence *resulting* in dismissal with prejudice for failure to prosecute constitutes an "extraordinary circumstance" under Rule 60(b)(6) warranting relief from judgment"); *Zero Down Supply Chain Sols., Inc. v. Global Transp. Sols., Inc.*, No. 2:07–CV–400–TC, 2012 WL 1188407, at *2-3 (D. Utah Apr. 9, 2021) (examining "whether the default was the result of the defendant's culpable conduct" in examining whether to grant relief from a default judgment under Rule 60(b)); *cf.* Parsee, No. 97-81, 2022 WL 74190, at *4 (denying relief under Rule 60(b)(6) when there was no showing "counsel's conduct . . . affected the outcome of his motion for compassionate release").

[68] R. Doc. 146 at 3.

[69] *Id.*

[70] *Id.* at 4-5.

[71] *Id.* at 6-7.

[72] *See Al-Sabah*, 2021 WL 5176463, at *2 (quoting *Lal v. California*, 610 F.3d 518, 524 (9th Cir. 2010)).

[73] R. Doc. 136.

11

his administrative remedies, and the Court invited Dorsey to refile his motion for compassionate release after he had done so.[74] Dorsey's counsel was not grossly negligent in filing the motion prematurely, and the fact it was premature did not result in the Court's eventual denial of compassionate release on the merits, as the Court invited Dorsey to refile his motion after he followed the necessary procedural steps. Dorsey argues his counsel included factual errors, such as stating Dorsey "has a host of health problems" and "has been a model inmate," which Dorsey argues affected his credibility and biased the Court against him.[75] The Court first notes that Dorsey has made similar arguments himself. In his BOP application for compassionate release, Dorsey argued he "suffer[s] from seizures and other underlying issues that I feel would be life threatening [sic] if I was to become effected [sic] with Covid-19,"[76] and in the current motion for reconsideration Dorsey argues his obesity puts him at risk of severe illness if he contracts COVID-19.[77] In the current motion he also attempts to diminish the seriousness of his rule violations while incarcerated.[78] In any event, any inaccuracies did not affect the Court's view of Dorsey. The June 24, 2021, Order and Reasons denying compassionate release did not reference any inaccuracies in his first motion for compassionate release or Dorsey's credibility generally,[79] and Dorsey may rest assured the Court did not view him as dishonest.

During the pendency of Dorsey's first motion for compassionate release, Dorsey's counsel was admitted to practice law. Eventually, on April 7, 2021, Dorsey's counsel was suspended from the practice of law for six months, to be followed by a two-year

---

[74] R. Doc. 139.
[75] R. Doc. 146 at 4-5; *see* R. Doc. 136 at 1-2.
[76] R. Doc. 142-2.
[77] R. Doc. 146 at 44.
[78] *Id.* at 51-53.
[79] *See* R. Doc. 145.

probationary period, but this was well after the first motion for compassionate release was decided.[80] Dorsey did not exhaust his administrative remedies until March 4, 2021, when the warden denied his request for compassionate release.[81] Thereafter, Dorsey was free to seek assistance from his current counsel to file a second motion for compassionate release, retain another attorney to do so, or do so himself. Dorsey admits he had "lost confidence" in his counsel and chose the latter, presenting his reasons for compassionate release himself. He does not state that he ever notified his counsel the warden had denied his application, and he does not state that he ever asked his counsel for assistance in drafting his second motion for compassionate release. In fact, Dorsey's counsel could not have been involved in filing a second motion for compassionate release for very long, as he was suspended approximately a month after Dorsey exhausted his administrative remedies. Ultimately, after reviewing the record, the Court does not find any gross neglect that affected the outcome of Dorsey's second motion for compassionate release.

## CONCLUSION

**IT IS ORDERED** that Defendant Christopher Dorsey's motion,[82] to the extent it is construed as a motion for reconsideration of the Court's June 24, 2021, Order and Reasons denying compassionate release, is **DENIED**.

**New Orleans, Louisiana, this 28th day of June, 2022.**

**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**

---

[80] *In re Robert C. Jenkins, Jr.*, 2021-B-0293, p. 1 (La. 4/7/21) (per curiam). The full period of suspension was one year and one day, but all but six months was deferred. *Id.* Dorsey's counsel admitted to neglecting legal matters, failing to communicate with clients, failing to refund unearned fees, and failing to properly terminate the representation of clients, and discipline was imposed by consent. *Id.* It is unclear when allegations of misconduct were first lodged.
[81] R. Doc. 142-1.
[82] R. Doc. 146.