UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | CRIMINAL NO. 11-119 |
| | * | |
| VERSUS | * | SECTION "E" (5) |
| | * | |
| CHRISTOPHER DORSEY | * | |
| | * | |
| * * * * * * * * * * * * * * * * * * * * * * * | * | |

**MEMORANDUM
IN RELATION TO ALLEGED SUPERVISED RELEASE VIOLATIONS**

COMES NOW, Defendant, Christopher Dorsey, through his undersigned counsel, and respectfully submits this brief related to the alleged supervised release violations.

**BACKGROUND**

Mr. Dorsey pleaded guilty to being a felon in possession of a firearm and obstruction of justice more than ten years ago. The Court sentenced him to 168 months of imprisonment and two years of supervised release. Judgment (Dkt. No. 92).

In the Petition for Warrant or Summons for Offender Under Supervision that was submitted (on or about March 21, 2024), the government alleged supervised release violations of Standard Condition No. 9 and Special Condition No. 5.

Standard Condition No. 9 states: "the defendant shall not associate with any persons engaged in criminal activity and shall not associate with any person convicted of a felony, unless granted permission to do so by the probation officer."

Special Condition No. 5 states in part: "The Defendant shall obtain prior written approval from the Court before entering into any self-employment."

1

On March 22, 2024, a warrant for arrest was issued as a result of said Petition.  On or about March 27, 2024, Mr. Dorsey was arrested in the District of Nevada after he reported to United States Probation.  On March 27, 2024, there was an initial appearance hearing in the District of Nevada.

At said hearing, the government in Nevada agreed that Mr. Dorsey could be released with a condition that he self-report to the District of Louisiana.  The government also noted on the record that "[t]here appears to be a communication lapse between the Court and the supervising office here in that Mr. Dorsey was granted authority from the Probation Office here to perform in some of these instances mentioned in the petition.  We expect that that will be ironed out down in Louisiana." *See* Exhibit 1, March 27, 2024 transcript at p. 6 (emphasis added).

The government also noted on the record "And Officer Sones also reported – which I should have provided Your Honor up front – Mr. Dorsey has been very compliant on supervision. There have not been issues of lack of communication or unresponsiveness.  They believe that he is responsive to conditions." *See id.* at p. 7 (emphasis added).

It should be noted that before the Petition for Warrant or Summons for Offender Under Supervision was submitted (March 21, 2024), undersigned counsel was planning on filing the attached draft Motion to Approve Self-Employment (attached hereto as Exhibit 2), and counsel were in discussions with AUSA Maurice Landrieu regarding the same.

Mr. Dorsey respectfully requests that this Honorable Court permit him to remain on supervised release.

**MR. DORSEY SHOULD REMAIN ON SUPERVISED RELEASE**

Here, the specific alleged violations will be addressed individually.

In the Petition, the government alleged a supervised release violation of Standard Condition

No. 9 as follows:

- On February 8. 2024, Dorsey performed in a music concert, in Las Vegas, Nevada, with Torrance Hatch Jr., stage name "Lil Boosie". In 2010, Hatch was convicted of possession with intent to distribute a controlled substance and introduction of contraband in a penal institution in the state of Louisiana. On June 14, 2023, Hatch was arrested by federal agents in San Diego, California and charged with felon in possession of a firearm. Hatch's federal case is pending in the Southern District of California. Dorsey associated with a person convicted of a felony without prior permission from personnel of U.S. Probation. The Probation officer also notes that while Dorsey was residing at the Residential Re-Entry Center in Las Vegas, Nevada, he and Radric Davis, stage name "Gucci Mane" recorded an album titled "Choppers and Bricks". The album was released on December 15, 2023. In 2014, Davis plead guilty to possession of a firearm by a convicted felon in the Northern District of Georgia.

Here, Mr. Dorsey originally received permission to participate in this event from the

leadership at the halfway house leadership. That cannot be reasonably disputed. <u>As such, at the

time of the approval, Mr. Dorsey was under the jurisdiction of the Bureau of Prisons, and he was

not on supervised release yet.</u>[1]

---

[1] 18 U.S.C. § 3624(e) governs the conditions under which a person's supervised release may begin. That section states, in pertinent part:

> A prisoner whose sentence includes a term of supervised release after imprisonment shall be released by the [BOP] to the supervision of a probation officer who shall, during the term imposed, supervise the person released to the degree warranted by the conditions specified by the sentencing court. The term of supervised release commences on the day the person is released from imprisonment.... A term of supervised release does not run during any period in which the person is imprisoned in connection with a conviction for a Federal, State, or local crime....

*Id.* The Supreme Court addressed this statutory language in *United States v. Johnson*, 529 U.S. 53, 120 S.Ct. 1114, 146 L.Ed.2d 39 (2000). In *Johnson*, the defendant was convicted of several drug and firearms convictions. Id. at 55, 120 S.Ct. 1114. An appellate court later declared two of his convictions invalid, and, as a result, Johnson had over-served his remaining sentences by two-and-a-half years. *Id.* Johnson moved the trial court to reduce his term of supervised release by the

Specifically, Mr. Dorsey received permission for the February 8, 2024 event from the Halfway House Facility Director, Ramon Montes, and Job Developer, LaTarsha Ennis. *See also* Exhibit 3 (flyer). Mr. Dorsey obtained a contract based on this permission and he was also paid a deposit.

Mr. Dorsey also received permission for an event on February 10, 2024 with different music artists (this event is not alleged to be a violation). *See* Exhibit 4 (flyer).

Mr. Dorsey was originally supposed to have completed his halfway house time by July 2024, however, he was released early on February 1, 2024, as he received additional credits. Upon his release from the halfway house, Mr. Dorsey was also given formal approval for the February events by United States Probation Officer Annis Seopaul Sones, and her supervisor, Todd Fredlund, at an in-person meeting on or about February1, 2024/February 2, 2024 in Las Vegas, Nevada. Mr. Dorsey's sister, Tracey Smith, (who is also his manager), was also present for this meeting. After the two February events, Officer Sonnes followed up with Mr. Dorsey and Ms. Smith regarding his pay for the events. *See* Exhibit 5. There was no discussion regarding any violations.

---

excess time he had served in prison while unlawfully incarcerated. *Id.* The Supreme Court held that "a supervised release term does not commence until an individual is 'released from imprisonment.'" *Johnson*, 529 U.S. at 57, 120 S.Ct. 1114 (quoting 18 U.S.C. § 3624(e)). The Supreme Court held that "a supervised release term does not commence until an individual is 'released from imprisonment.'" *Johnson*, 529 U.S. at 57, 120 S.Ct. 1114 (quoting 18 U.S.C. § 3624(e)). Despite the fact that Johnson remained in prison beyond the period in which his supervised release should have run, the plain language of the statute requires actual release from imprisonment before a person may begin serving his term of supervised release. *Id.* at 60. In this context, the Supreme Court declared that:

> A term of supervised release comes "after imprisonment," once the prisoner is "released by the [BOP] to the supervision of a probation officer." Supervised release does not run while an individual remains in the custody of the [BOP].

*Johnson*, 529 U.S. at 57, 120 S.Ct. 1114 (quoting 18 U.S.C. § 3624(e)).

Officer Sonnes further requested after the events in February that Mr. Dorsey not book any other concerts/hosting until U.S. Probation could address the Court regarding his conditions. Mr. Dorsey has complied with that request.

As such, Mr. Dorsey's contact with Mr. Hatch was in accordance with permission from the leadership of the halfway house and subsequently U.S. Probation. Accordingly, this basis for an alleged supervised release violation should be denied. As stated above, at the hearing on March, 27, 2024, the government noted that "[t]here appears to be a communication lapse between the Court and the supervising office here in that Mr. Dorsey was granted authority from the Probation Office here to perform in some of these instances mentioned in the petition." *See* Exhibit 1, March 27, 2024 transcript at p. 6 (emphasis added).

Furthermore, it is respectfully submitted that Mr. Dorsey should not be found in violation of this condition for recording an album with Radric Davis, stage name "Gucci Mane." It should be noted that Mr. Dorsey was given approval by his case manager, Eric D. Curtis, and Halfway House Facility Director, Ramon Montes, to record said album. This too, was a BOP halfway house approval. As such, said album was released on December 15, 2023, prior to Mr. Dorsey being on supervised release.[2] Thus, it is respectfully submitted that this should not be considered a supervised release violation.

It should also be noted that two individuals that Mr. Dorsey performed with are successful music artists as well. While Mr. Dorsey understands that while on supervised release moving

---

[2] It should also be noted that Mr. Dorsey was in Las Vegas at the time of recording, and Davis was, on information and belief, recording in Georgia. As such, they were not physically present together when the album was being recorded.

5

forward, he needs to receive permission for any such contact, it is respectfully submitted that the contact was for employment/artistic purposes and there was no violence or illegal activity.[3]

Accordingly, Mr. Dorsey requests that this Honorable Court find that he is not in violation of this condition of his supervised release.

In said Petition, the government also alleged three violations of Special Condition No. 5. Each alleged violation will be addressed individually. The first alleged violation states:

- On February 8, 2024, Dorsey performed in a music concert, in Las Vegas, Nevada, with Torrance Hatch Jr. stage name "Lil Boosie". When questioned by personnel of U.S. Probation about his employment as a rapper and the need to find other employment, Dorsey responded by saying I'm a "rapper". that [is] my profession." Dorsey failed to obtain prior written approval from the Court before entering into self-employment.

Regarding the concert with Torrance Hatch Jr., stage name "Lil Boosie", as stated above, Mr. Dorsey had permission from the leadership at the halfway house prior to being on supervised release, and he subsequently obtained permission from United States Probation as well. As such, this basis for an alleged violation should be denied.

While Mr. Dorsey stated that he was a "rapper," he was simply relaying information as to his background. As stated above, prior to the instant alleged violations, undersigned counsel was planning to file the attached Motion (Exhibit 2) and were also in communication with counsel for the government. The attached Motion sets forth a legitimate basis for the Motion to be granted. Mr. Dorsey is not simply an aspiring musician/artist.

---

[3] Initially, the jurisdiction was within the BOP, as Mr. Dorsey was in the halfway house, however, when he was released, he sought and obtained permission from his supervising officer. Mr. Dorsey proceeded with the authority granted to him from his supervising officer, believing that he was complying with the conditions of his release. In light of these proceedings, Mr. Dorsey now understands that Court approval is necessary, and he will seek said approval in addition to continuing to have open lines of communication with his supervising officer.

Mr. Dorsey has a history of successful music employment which predates the instant offense. Mr. Dorsey makes his living through music and performances. Once his supervision expires, he will continue to be in the music industry field.

The second alleged Special Condition No. 5 violation states as follows:

- On February 16, 2024, Dorsey release a video on Youtube titled "Really Understand". Dorsey failed to obtain prior written approval from the Court before entering into self-employment.

Regarding the posting of a music video on February 16, 2024, Mr. Dorsey was not informed by the halfway house or United States Probation that he needed Court approval to post music videos online, or that posting music videos required Court approval as "self-employment."

It should be noted that Mr. Dorsey recorded the song "Really Understand," while he was in the halfway house. Specifically, Mr. Dorsey was given permission to go to the studio to record and attend church off the premises while on rec-time from the half-way house every weekend (since October 2023). As such, the underlying recording was completed while Mr. Dorsey was under the jurisdiction of the BOP, and he was not on supervised release. While the video was ultimately posted when he was on supervised release, he was not informed that this would constitute self-employment which required judicial approval. Moving forward, absent further orders from this Honorable Court, Mr. Dorsey fully understands that he will need to seek permission to engage in self-employment conduct, such as performing in concerts or posting music videos online.

The third alleged Special Condition No. 5 violation states as follows:

- On February 24, 2024, Dorsey and Curtis Stewart, stage name, "Kidd Kidd" released a music video on Apple Music titled "Yellow Tape". Dorsey failed to obtain prior written approval from the Court before entering into self-employment.

As stated above, Mr. Dorsey was not informed by the halfway house or United States Probation that he needed Court approval to post music videos online, or that posting music videos required Court approval as "self-employment."

Specifically, as to the video posted on February 24, 2024, Mr. Dorsey <u>also recorded this song while he was in the BOP's jurisdiction of the halfway house</u>.

It should also be noted that Mr. Dorsey appeared on this song/video for a friend of over twenty years. The song is for the artist, Kidd Kidd, and features Mr. Dorsey. Mr. Dorsey did not receive any compensation for his song or video; however, he may ultimately receive funds from his publishing rights.

Accordingly, in light of the unique circumstances of this case, Mr. Dorsey requests that he remain on supervised release.

In 18 U.S.C. § 3583, Congress authorized district courts to impose limited terms of supervised release, depending on the crime for which the defendant was convicted. Congress listed certain mandatory conditions for supervised release and authorized district courts to impose other appropriate conditions. However, Congress mandated that:

> Written statement of conditions.—The court shall direct that the probation officer provide the defendant with a written statement that sets forth all the conditions to which the term of supervised release is subject, and that is sufficiently clear and specific to serve as a guide for the defendant's conduct and for such supervision as is required.

18 U.S.C. § 3583(f).

As Congress required, conditions of supervised release must be "sufficiently clear and specific to serve as a guide for the defendant's conduct and for such supervision as is required." *Id.* "If a condition, however well-intentioned, is not sufficiently clear, it may not be imposed." *United States v. Reeves*, 591 F.3d 77, 80 (2d Cir. 2010). "Due process requires that [a] condition[]

of supervised release be sufficiently clear to give the person of ordinary intelligence a reasonable

opportunity to know what is prohibited, so that he may act accordingly." *United States v. Simmons*,

343 F.3d 72, 81 (2d Cir.2003) (internal quotation marks omitted).

A defendant has a "due process right to conditions of supervised release that are sufficiently

clear to inform him of what conduct will result in [the defendant] being returned to prison." *Id.*

(internal quotation marks omitted).

As the United States Court of Appeals for the Fifth Circuit in *United States v. Paul*

recognized: "Restrictions on an offender's ability to interact with particular groups of people, to

hold certain types of employment, and to frequent certain places must provide 'fair notice' of the

prohibited conduct." 274 F.3d 155, 166 (5th Cir. 2001) (citing *United States v. Loy*, 237 F.3d 251,

262 (3d Cir. 2001) (noting that the same principles of due process and notice that apply to criminal

statutes apply to supervised release conditions). "The sentencing court has an obligation to express

its sentences in clear terms to reveal with fair certainty its intent." *United States v. Patrick*

*Petroleum Corp. of Michigan*, 703 F.2d 94, 98 (5th Cir. 1982); *accord United States v. Taylor*, 973

F.3d 414, 421 (5th Cir. 2020) ("Criminal sentences must reveal with fair certainty the intent of the

court."); *see also United States v. Guagliardo*, 278 F.3d 868, 872 (9th Cir. 2002) ("A probationer

... has a separate due process right to conditions of supervised release that are sufficiently clear to

inform him of what conduct will result in his being returned to prison."). Where this obligation has

not been met, it may be "in the interest of judicial economy and fairness to all concerned parties

that we remand for clarification of the sentence." *Patrick Petroleum Corp. of Michigan*, 703 F.2d

at 98; *accord United States v. Juarez*, 812 F.3d 432, 437 (5th Cir. 2016) (finding a sentence was

"unclear or ambiguous" and therefore "vacat[ing] and remand[ing] for clarification in the interest

of judicial economy and fairness to all concerned parties"); *United States v. Garcia–Ortiz*, 310

9

F.3d 792, 795 (5th Cir. 2002) ("In light of the ambiguity in the record, the best course is to remand the case for reconsideration of the sentence."). *See also, e.g., United States v. Nunley*, No. 21-50572, 2022 WL 16948571, at *3 (5th Cir. Nov. 15, 2022) (unpublished).

In light of what appears to be confusion related to the Supervised Release Officer's authority to permit Mr. Dorsey to participate in the concerts, and the issue related to what conduct amounts to "self-employment," it is respectfully submitted that Mr. Dorsey should not be deemed to have violated the conditions of his supervision.

## MR. DORSEY IS A BENEFIT TO THE COMMUNITY AND HE HAS CHANGED HIS LIFE FOR THE BETTER. HE IS A POSITIVE INFLUENCE AND INSPIRATION, INCLUDING FOR THOSE WHO COME FROM UNDERPRIVILEGED COMMUNITIES OR WHO WERE INCARCERATED.

In addition to addressing the alleged violations above, Mr. Dorsey would like to provide additional information to this Honorable Court regarding his recent efforts and accomplishments. Having been released after serving his prison term, Mr. Dorsey has devoted himself to becoming a contributing and law-abiding citizen. He has been employed with the Emerald Dream Foundation, a charitable/animal rescue organization.[4]  Specifically, Mr. Dorsey is employed as an outreach worker.   For example, his role and responsibilities as an outreach worker include attending and participating in programs and events such as:

- Women's Empowerment with the Las Vegas Metropolitan Police Department and the Las Vegas Raiderettes;

- Shopping with inner city youth;

- Halloween Trunk or Treat with the Las Vegas Metropolitan Police Department;

- Work with Hope for Prisoners;

---

[4] https://www.emeralddreamfoundation.org/

- Thanksgiving Turkey Giveaway - with the Las Vegas Metropolitan Police Department and Doolittle Center;

- Christmas Turkey Giveaway - with Las Vegas Metropolitan Police Department and Doolittle Center,

- Christmas with Santa event – Doolittle Center.

His employer provides his employment information on a regular basis including timesheet, paycheck, and paycheck stub. *See, e.g.*, Exhibit 6.

Lana Fuchs, President/CEO of the Emerald Dream Foundation writes in part:

I am writing to you on behalf of Christopher Dorsey, who, after serving a 13-year sentence, has been a beacon of positive change and an exemplary member of our community. It is my hope that through this letter, I can convey the depth of his transformation and the sincere efforts he has made towards rehabilitation and contributing positively to society.

Since Christopher's release, he has dedicated himself to not only rebuilding his life but also enriching the lives of others around him. His commitment to positive change is evident through his commitment to the Hope for Prisoners program, attending every class, workshop and huddle-up, his consistent involvement in his children's lives, his work with the Emerald Dream Foundation, working with many different groups and individuals, including Doolittle Community Center, Pearson Community Center, Las Vegas Metropolitan Police Department Community Outreach program, and many others helping to feed and mentor at risk youth. Christopher has worked tirelessly, demonstrating an unwavering commitment to making amends and contributing to the community in meaningful ways. His actions have not gone unnoticed. Many in our community have been inspired by his dedication, hard work, and the positive attitude he maintains despite the challenges he has faced. Christopher has become a role model for others, proving that people can change and make significant contributions to society if given the chance. It is with this in mind that I respectfully request your consideration in allowing Christopher Dorsey the opportunity to start anew. He has shown remarkable resilience and a genuine desire to live a productive, law-abiding life. It is clear that Christopher is committed to making the most of this second chance, not just for himself but for the betterment of our community as a whole.

I believe that society benefits more from rehabilitating and supporting those who have shown a sincere desire and effort to change than by continuing to punish them for past mistakes from which they have learned and grown. Christopher's story is one of hope, redemption, and the power of second chances. Thank you for your

time and consideration in reviewing this request. I am confident that Christopher will continue to make positive strides and contribute to our community in significant ways. Should you require any further information or wish to discuss this matter in more detail, please do not hesitate to contact me.

Exhibit 7.

In addition to said employment, Mr. Dorsey has also received employment opportunities as a result of status/musical history.  *See* Exhibit 8, Michael Reinert letter.

Mr. Dorsey, who has performed as a rapper since the age of 13, has also become an in-demand recording artist in Las Vegas, Nevada, where he now lives. Mr. Dorsey had previously been part of a historic musical legacy, the "Hot Boys", as part of the Cash Money Records family. He also had a very high profile and highly respected solo career prior to his incarceration.  *See id.*

Michael Reinert of the law firm Fox Rothschild is Mr. Dorsey's entertainment lawyer and has written the Court to explain the opportunities available to Mr. Dorsey. *See id.*

As explained by Mr. Reinert, Mr. Dorsey has been sought out by many influential hip-hop artists, including Grammy award-winning artists such as Gucci Mane, Kevin Gates, and Finesse2. *See id.* He has also collaborated with Mike Will Made It, one of the most respected and award-winning producers of the last 10 years. *See id.* In the next six to nine months, Mr. Dorsey will have the opportunity to release two full albums on significant record labels, in addition to performing as a guest artist for others. *See id.*

Helping to manage Mr. Dorsey's career are an array of professionals, including (1) Mr. Reinert, who will handle Dorsey's legal affairs; (2) Tracey Smith, as experienced music executive who will serve as Mr. Dorsey's manager; and (3) Phil Sarna Business Management, which will handle Mr. Dorsey's finances.  In addition, Mr. Reinert has been in discussions with the preeminent talent agency CAA to manage Mr.  Dorsey's live performances. *See id.*  Mr. Dorsey is also respected and supported in the music industry.

For example, Bryan Williams, of Cash Money Records, writes in part:

We are writing to express our full support for Christopher Noel Dorsey, professionally known as BG, and his request to travel and work in order to engage with youth in communities nationwide. With over 30 years of experience in the music industry, we understand the profound impact that hip-hop music can have as a form of expression and connection within communities.

Christopher Dorsey is not only a talented recording artist but also a beacon of resilience and growth. Having worked closely with him in the past, we have witnessed his dedication to his craft and his unwavering commitment to using his music as a platform for personal and societal reflection. Hip-hop music, as a genre, goes beyond mere influence; it serves as a powerful means of self-expression and storytelling for artists like Christopher. His music reflects his experiences, struggles, and triumphs, resonating with audiences on a deep and emotional level. By sharing his authentic journey with people across the country, Christopher has the potential to inspire, uplift, and empower individuals to navigate life's challenges with courage and determination.

As music executives, we have seen firsthand the positive impact that artists like Christopher can have on communities. Through their music and personal narratives, they have the ability to foster understanding, empathy, and unity among people from diverse backgrounds. Christopher's unique voice and perspective are invaluable assets in promoting messages of hope, resilience, and personal growth. We wholeheartedly believe that granting Christopher the opportunity to travel and engage with music will not only support his artistic endeavors but also enrich the lives of countless individuals in communities nationwide. By embracing his music and his expression, we are fostering a culture of creativity, empowerment, and positive change. Thank you for considering this request and for recognizing the importance of Christopher Dorsey's contributions to the community.

See Exhibit 9.

Phil Sarna, Founder and CEO of PSBM, a business management firm specializing

in the Entertainment and Sports Industries, writes in part:

Mr. Reinert brought Mr. Dorsey to my attention a few months back. As he has done in the past, Mr. Reinert was coming to me to see if I would be a good fit for working with this client. He explained that Mr. Dorsey was living in Las Vegas under supervised release and was working on his music career. Given that there would be income created by Mr. Dorsey's activities, Mr. Reinert wanted to make sure that all of Mr. Dorsey's financial needs would be properly handled and all of his obligations timely met. My team and I worked with Mr. Reinert's office and with Tracey Smith, Mr. Dorsey's manager, to establish the proper bank accounts and obtain the

13

necessary tax documents. Since that time, PSBM has handled Mr. Dorsey's financial business and has maintained complete and accurate records of same.

While I have only known Mr. Dorsey a short time, I do know that he has dedicated himself to being a strong and contributing member of the community. He has contributed his time to both the Emeral Dream Foundation www.emeralddreamfoundation.org and Hope for Prisoners https://hopeforprisoners.org, from where he graduated. It is clear that Mr. Dorsey takes his responsibilities, obligations and freedom very seriously.

I have worked with many performers who have, unfortunately, found themselves at times on the wrong side of the law. It is not something we cater to but it is a reality of our world. Yet I have also seen the difference between those who understand the debt they paid and must continue to pay, and those who take for granted the opportunities presented to them. I can say with great certainty that Mr. Dorsey falls squarely in the former and I know he will continue to pursue only the highest standards in his career and as a member of the community. I hope the court will find that it is in not only Mr. Dorsey's best interests but in the community's as a whole to allow him to pursue his career with the careful guidance of the court and his representatives.

Exhibit 10.

In addition to his history of musical talent, Mr. Dorsey remains dedicated to helping the community and bettering others, including those who are/were incarcerated.

For example, Mr. Dorsey also regularly works with Jon Ponder and the Hope for Prisoners organization.[5] Hope for Prisoners assists with reentry by providing the formerly incarcerated long-term support and services as they work to reclaim their lives, families and standing in the community. Mr. Dorsey graduated from the Hope for Prisoners program, and he attends graduations to help hand out certificates to the new graduates. *See* Exhibit 11.

Jon Ponder, Founder and CEO of HOPE for Prisoners, Inc., writes in part:

[[HOPE for Prisoners is a] Southern Nevada comprehensive reentry program that assists returning citizens to navigate the challenges they might face during the reintegration process. Our organization works with men, women and young adults that are exiting different arenas of our judicial system, providing training, mentoring and supportive services to assist individuals with successful

---

[5] https://hopeforprisoners.org/

14

reintegration back in their families, the workforce, and our community. I am writing today on behalf of Mr. Christopher Dorsey. I have had the pleasure of working with Christopher for approximately 6 months and can attest to the strength of his character and his desire to remain a productive and contributing member of our community. He graduated from our program in September 2023 and is currently employed as the Director of Community Outreach for the Emerald Dream Foundation, despite the challenges he has faced in the past. He is determined and committed to remain on the positive path that he has chosen for his life. I am personally mentoring Christopher and am in contact with him on a nearly daily basis. I feel confident that he is not a liability to anyone, and I hope that this letter will help you in making your decision.

Exhibit 12.

As another example, of Mr. Dorsey's dedication and efforts, Victor Fuchs, of Helix Electric,

writes in part:

I am reaching out to you today to discuss Christopher Dorsey, a man whose story is not just one of personal redemption but also of significant community impact. Since his release after a 13-year incarceration, Christopher has embarked on a remarkable journey of transformation that has not only reshaped his life but has also positively influenced our community in substantial ways.

Christopher's dedication to bettering himself and those around him has been evident through his numerous contributions and initiatives aimed at supporting our community's most vulnerable. The sincerity of Christopher's efforts to make amends and his dedication to public service have been truly inspiring. He has become a beacon of hope and a testament to the power of second chances, showing that with determination and support, individuals can turn their lives around and become valuable contributors to society. Christopher's story is a powerful reminder of the human capacity for growth and redemption. His actions since his release reflect a deep commitment to living a life of purpose and service. It is clear that Christopher has not only changed his trajectory but has also touched the lives of many in our community through his work.

Therefore, I humbly ask for your compassionate consideration of Christopher Dorsey's case, recognizing the profound transformation he has undergone and the positive impact he continues to make within our community. His journey represents the very essence of redemption and the positive outcomes that can emerge from providing individuals with the opportunity for a second chance, I am confident that Christopher's continued efforts will only further benefit our community, and I believe that supporting him in his journey not only serves justice but also reinforces the values of rehabilitation and community support that are central to our society.

Exhibit 13.

Cedric Crear, elected City Councilman for the Ward 5 of the City of Las Vegas, writes in part:

> I met Christopher when a local construction company called Helix, which he has performed volunteer work for, sponsored a holiday event on December 16, 2023, called "Breakfast With Santa" at the Doolittle Center.  The Doolittle Community Center is located at 1950 J St., Las Vegas, Nevada 89106, and provides services to many at risk youth, and most importantly, encouragement to lead productive lives. During this event, I was a special guest and Christopher was "Santa."  …

> I am familiar with his music and realize that it often times may reflect the underside of urban life, but based on my interaction with Christopher he has showed maturity, engagement, and a real commitment to making life better for the children that he aided that day.  It is my understanding that Christopher also does additional community service work, including with the Emerald Dream Foundation.

> I truly believe he will be an asset to our community moving forward and will take responsibility in the future to honor this Court's orders.

Exhibit 14.  *See also* attached photo and flyer.

Accordingly, it is evident that Mr. Dorsey is sincerely dedicated to helping the community and being a positive influence on others.  Mr. Dorsey has earnestly sought to comply with the conditions and orders of this Honorable Court, including following the conditions and rules of the halfway house and United States Probation.  As the government noted on the record at the March 27, 2024 hearing, "And Officer Sones also reported – which I should have provided Your Honor up front – Mr. Dorsey has been very compliant on supervision.  There have not been issues of lack of communication or unresponsiveness.  They believe that he is responsive to conditions." *See* Exhibit 1 at p. 7 (emphasis added).

**CONCLUSION**

Mr. Dorsey respectfully requests that this Honorable Court permit him to remain on supervised release.

Dated this 5th day of April, 2024.

Respectfully submitted,


*/s/ David Z. Chesnoff*
*(pro hac vice)*
David Z. Chesnoff
Nevada Bar No. 2292
Chesnoff & Schonfeld
520 S. Fourth Street
Las Vegas, Nevada 89101
Telephone: (702) 384-5563
dzchesnoff@cslawoffice.net

William P. Gibbens, 27225
Ian L. Atkinson, 31605
SCHONEKAS, EVANS MCGOEY
& MCEACHIN, L.L.C.
909 Poydras Street, Suite 1600
New Orleans, Louisiana 70112
Telephone: (504) 680-6050
Fax: (504) 680-6051
billy@semmlaw.com
ian@semmlaw.com

Attorneys for Christopher Dorsey